UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| VICTOR HERNESTO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 14-764-CV-W-GAF-P |
| ) | |
| LARRY DENNEY, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, a convicted state prisoner currently confined at the Crossroad Correctional Center in Cameron, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 conviction and sentence for robbery in the first degree. Petitioner presents three (3) grounds for relief: (1) trial court error in not declaring a mistrial when Detective Michael Blakemore testified that a witness told Detective Blakemore that petitioner had pointed a gun at the witness; (2) ineffective assistance of trial counsel for failure to object to a variance between the charge and the instructions; and (3) ineffective assistance of appellate counsel for failure to claim that the trial court plainly erred in accepting the State's proposed instructions due to a variance between the charge and the instruction. Respondent contends that petitioner's claims are without merit.

**FACTUAL BACKGROUND**

In affirming petitioner's conviction and sentence, the Missouri Court of Appeals set forth the following facts:

> Viewed in the light most favorable to the verdict, the evidence established that, on July 6, 2008, Herendira Medrano went to the Apple Market grocery store in Kansas City. When Medrano came out of the store, she loaded her groceries into

her car, placed her four-year-old son in the car and fastened his seat belt, and then got in her car to leave. While Medrano was getting in her car, a man approached the car, opened the door, and threatened Medrano with what Medrano believed to be a handgun. The man demanded Medrano's property and told her to get out of the car.

Medrano refused to relinquish her car with her son in the back seat. She did, however, give the man her purse, two bracelets, and two necklaces. The man then pulled a rosary from her son's neck. The man kept yelling at Medrano to get out of the car while pointing a gun in her face. When Medrano attempted to grab the gun, a bystander approached and asked them to stop. The man told the bystander, "Don't get involved." The bystander then tried to get in front of the man, and the man ran away.

After the robbery, Officer Blake Groves of the Kansas City, Missouri, Police Department responded to the scene and spoke with Medrano. Groves discovered that the Apple Market had video surveillance footage of the robbery.

On July 7, 2008, Kansas City Police Detective Michael Blakemore began a search for the robber. Blakemore obtained copies of the video footage from the manager of the Apple Market and released it to local television stations to broadcast in hopes that a viewer would recognize the robber and call the police. Another police officer saw the video on a news broadcast and informed Blakemore that he recognized the suspect as [petitioner]. Blakemore prepared a six-person photographic lineup containing [petitioner]'s picture and showed it to Medrano. Medrano identified [petitioner] as the robber.

On July 11, 2008, Officer Groves saw [petitioner] standing at a bus stop in front of the Apple Market, and Groves recognized [petitioner] from the video surveillance tape. Groves arrested [petitioner]. As he was booking [petitioner] into jail, Groves confirmed [petitioner]'s identity as the robber by [petitioner]'s facial tattoos, which were visible in the video footage.

Detective Gary Eastwood interviewed [petitioner] after reading him the *Miranda* warnings. [Petitioner] told Eastwood that he approached Medrano with a plastic toy gun that "looked real." [Petitioner] said that he did not know that there was a child in the car when he first approached, but he acknowledged that he took a necklace off the boy's neck. [Petitioner] also confessed to taking Medrano's purse. [Petitioner] told Eastwood that a man tried to intervene and that he pointed his toy gun at the man.

The State charged [petitioner] with one count of robbery in the first degree and one count of armed criminal action. After a trial, the jury found [petitioner] guilty of robbery in the first degree charge but deadlocked on the armed criminal

2

Case 4:14-cv-00764-GAF   Document 15   Filed 01/13/15   Page 2 of 8

action count. Because the jury was unable to reach a verdict on the armed criminal action count, the circuit court declared a mistrial as to that count. The jury recommended a sentence of twenty-five years imprisonment, and the circuit court followed the jury's recommendation and sentenced [petitioner] to twenty-five years imprisonment.

Resp. Ex. F, pp. 2-4.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 1**

In Ground 1, petitioner contends that the trial court erred in not declaring a mistrial when Detective Michael Blakemore testified that a witness told Detective Blakemore that petitioner had pointed a gun at the witness. Respondent contends that this claim is without merit and that the state court reasonably applied federal law.

In going through some still photographs taken from the video at trial, detective Blakemore testified that an unidentified person intervened to assist Ms. Medrano. Resp. Ex. A, p. 225.

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

Detective Blakemore continued by saying that the video showed petitioner with a gun and that the unidentified person also told Detective Blakemore that petitioner had a gun. *Id*. Trial counsel requested a mistrial and objected to this testimony, arguing that it was impermissible testimonial hearsay. Resp. Ex. A, p. 225. While conceding that the officer had blurted out inadmissible testimony, the State argued that any harm could be remedied by a curative instruction. *Id*. The trial court sustained the objection and gave a curative instruction, but denied the request for a mistrial. Resp. Ex. A, p. 226.

"Habeas corpus relief is available only where errors of constitutional magnitude have occurred." *Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991). A defendant's right to a fair trial has been violated only if the misconduct "'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000), *cert. denied*, 531 U.S. 1128 (2001). Further, the Supreme Court has noted that, when the trial court gives a curative instruction, the presumption is that the jury will follow that instruction in the absence of showing an "overwhelming probability" that the jury will not be able to follow the instruction. *Greer*, 483 U.S. n. 8.

The inadmissible hearsay comment did not render the entire trial fundamentally unfair. As the Missouri Court of Appeals explained, there was no evidence that the prosecution intentionally tried to introduce the hearsay statement of the person who came to Ms. Medrano's aid. Resp. Ex. F, p. 5. Instead, the testimony about the hearsay statement was a comment blurted out by Detective Blakemore as he was describing what was going on in the still photographs taken from the surveillance video. Resp. Ex. A. Even without this comment,

4

there was overwhelming evidence, including petitioner's own admission to the police, that petitioner was carrying an object that appeared to be a gun. Resp. Ex. A, pp. 191-92, 200-03, 225, 237-40.

In light of the curative instruction given to the jury to disregard Detective Blakemore's testimony about the hearsay statement and the presence of cumulative evidence, the decision of the trial court not to grant a mistrial did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* U.S.C. § 2254(d)(1) and (2). As such, Ground 1 will be denied.

## **GROUNDS 2 AND 3**

In the indictment, the State charged that petitioner committed the offense of robbery in the first degree by being armed with a deadly weapon. Resp. Ex. B, p. 6. In the instructions to the jury, the trial court instructed the jury that it could find petitioner guilty if the jurors found that petitioner "displayed or threated the use of what appeared to be a deadly weapon or a dangerous instrument." Resp. Ex. B, p. 22. In Ground 2, petitioner contends that he received ineffective assistance of trial counsel because counsel failed to object to a variance between the charge and the instructions. In Ground 3, petitioner contends that he received ineffective assistance of appellate counsel because counsel failed to claim that the trial court plainly erred in accepting the State's proposed instructions due to a variance between the charge and the instruction.

An inmate asserting ineffective assistance of counsel must prove both that counsel was incompetent and that he suffered prejudice from such incompetence. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). On the competence prong, an inmate must allege specific acts of

5

incompetence. *Id.* at 690. Counsel is presumed to be competent, and decisions based on a reasonable trial strategy do not demonstrate incompetence. *Id.* at 689-91. Counsel is not incompetent merely because the strategy did not succeed. *Id.* at 689. To demonstrate prejudice, an inmate must show, in light of all of the evidence in the case, that there is a reasonable probability of a different result. *Id.* at 694.

The motion court found that the variance between the instruction and the indictment was not material, and, therefore, any objection or claim of plain error on appeal would have been meritless. Resp. Ex. I, pp. 83-86. As the instruction was not improper, neither trial nor appellate counsel were ineffective for failing the challenge the instruction. Resp. Ex. I, pp. 85-86. The Missouri Court of Appeals, while finding that the variance was material, found that it was not prejudicial:

> The variance here was material because, as [petitioner] asserts, the information did not give him notice that he could be found guilty of first-degree robbery if the jury had determined that the gun he possessed was fake. However, the material variance was not prejudicial because [petitioner]'s defense at trial was adequate to defend against the evidence that he used what appeared to be a deadly weapon or dangerous instrument.
>
> If the basis of trial counsel's request for a conviction of second-degree robbery were that [petitioner] used a toy gun, as [petitioner] admitted to the police, it would have been an adequate defense to the charged method of use of a deadly weapon. However, it would have supported a finding of guilt under the submitted jury instruction, and thus, would not have been an adequate defense to the method submitted to the jury. Thereby, such a defense would make the material variance fatal under the law. But that was not the defense at trial. As the State asserts, the trial transcript shows that the basis for the second-degree robbery defense was not predicated on the gun being fake, but on the absence of any kind of weapon. Our review of the record confirms that trial counsel did not argue that [petitioner] merely had a toy gun in his hand, but told the jury that the State failed to meet its burden that [petitioner] had any sort of weapon on his person or in his hand.
>
> In the opening statement, Counsel stated that [petitioner] took Ms. Madrano's belongings without the use of a gun. Counsel further stated, "So if

6

> [petitioner] committed this robbery, why are we here, you may be asking? [Petitioner] did not have a weapon of any kind when he committed this robbery. He committed what is called strong arm robbery, not armed robbery." The defense advocated for a conviction of second-degree robbery. During cross-examination, trial counsel questioned Ms. Madrano about her knowledge of guns during the incident. He questioned the investigating officer as to whether a gun was found. However, trial counsel did admit, during a request to dismiss the ACA count, that the State presented evidence that [petitioner] had a fake gun. In closing, counsel argued that despite testimony stating a gun was used, the video footage shows there was no gun and "the State ha[d] not proven beyond a reasonable doubt [petitioner] used any sort of weapon at all in this case." Counsel concluded, "So really, what you have to consider is the video and whether or not the State has met their burden of proving that [petitioner] had any sort of weapon. And they haven't."
>
> Because the defense theory was that [petitioner] neither used a gun nor had any other weapon, it was adequate to defend against the method submitted to the jury. Had the jury believed the defense theory that [petitioner] did not have any sort of weapon, it would not have convicted [petitioner] of having what appeared to be a weapon in his hand. The material variance, not being prejudicial, was not fatal.

Resp. Ex. L, pp. 8-9.

The failure to object to a proposed instruction and failure to claim plain error on appeal when the trial court accepted that instruction are based on an issue of state law – whether the difference between the indictment and the instruction was a fatal variance. On issues of state law, this Court defers to the interpretation of state law by the state courts. *Schleeper v. Groose,* 36 F.3d 735, 737 (8th Cir. 1994) (habeas court not authorized to re-examine state court's determination of state law).

In light of the full record of the trial, the state courts did not unreasonably apply federal law in finding that petitioner failed to prove that trial counsel's failure to object to the variance between that charge and the instruction constituted fatal error or that the trial court plainly erred in allowing the instruction. As such, Grounds 2 and 3 will be denied.

7

## A CERTIFICATE OF APPEALABILITY WILL BE DENIED

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

/s/ Gary A. Fenner
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: January 13, 2015.